1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 SILVIA GARCIA, individually and on        Case No. '25CV1987 W    BLM
   behalf of all others similarly situated,
12                                            CLASS ACTION COMPLAINT
              Plaintiffs,
13                                            1. VIOLATION OF CALIFORNIA
        v.                                    UNFAIR COMPETITION LAW,
14                                            BUSINESS AND PROFESSIONS CODE
   VOGUE INTERNATIONAL LLC, a                 § 17200, *et seq.*
15 Delaware limited liability company, d/b/a  2. FALSE AND MISLEADING
   OGX; and DOES 1-10,                        ADVERTISING IN VIOLATION OF
16                                            BUSINESS AND PROFESSIONS CODE
              Defendants.                     § 17500, *et seq.*
17                                            3. VIOLATION OF CALIFORNIA
                                              CONSUMERS LEGAL REMEDIES
18                                            ACT, CIVIL CODE § 1750, *et. seq.*
19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

1.      Defendant Vogue International LLC ("Defendant"), doing business as OGX, manufactures and sells popular hair care products throughout the United States. To increase profits at the expense of consumers and fair competition, Defendant deceptively sells its products in oversized containers that do not reasonably inform consumers that they can be up to half empty, and thereby dupes unsuspecting consumers into paying for empty space. Below is a true and correct image of Defendant's Product in opaque containers evidencing the deception. The first photograph shows the Product as it appears to purchasers, and the second photograph shows that the Product's packaging is materially empty:

 

2.      Defendant markets the Product in a systematically misleading manner by representing it as adequately filled when, in fact, it contains an unlawful amount of empty space or "slack-fill." Defendant underfills the Product for no lawful reason. The front of

the Product's packaging does not include any information that would reasonably apprise Plaintiff of the quantity of product relative to the size of the container, such as a fill line.

3. Defendant underfills the Product to save money and to deceive consumers into purchasing the Product over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who have implemented labeling changes designed to alert consumers to the true amount of product in each container.

4. Accordingly, Defendant has violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, particularly California Civil Code sections 1770(a)(2), 1770(a)(5), and 1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.* and the False Advertising Law ("FAL"), Business & Professions Code section 17500, *et seq.*

5. Plaintiff Silvia Garcia ("Plaintiff") and other California consumers who have purchased the Product have thus suffered injuries in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth herein.

6. Several California courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt. et. al*, No. 20STCV44583 (Cal. Super. Ct. L.A. Cty. May 20, 2021) (defendant's demurrer to claims involving slack-filled protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (Cal. Super. Ct. San Bernardino Cty. Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of Nature, Inc*., No. BC651252 (Cal. Super. Ct. L.A. Cty. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Thomas v. Nestle USA, Inc.*, No. BC649863 (Cal. Super. Ct. L.A. Cty. Apr. 29,

2020) (certifying as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

### PARTIES

7.    Plaintiff is, and at all times relevant hereto was, a citizen of California.

8.    Defendant is a New Jersey company with its principal place of business located in Skillman, New Jersey.  Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

9.    At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants.  Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Vogue International LLC and DOE Defendants will hereafter collectively be referred to as "Defendants").

10.    The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.    In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

12.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its advertising of the Product's packaging, specifically by representing that it was full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of hair product contained in the Product's packaging in order to convince the public and consumers to purchase the Product, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

13.     Defendant has created and still perpetuates a falsehood that the Product's packaging contains an amount of product commensurate with the size of the package, though it actually contains nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Product are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

14.     This Court also has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

15.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

16.     Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

## FACTUAL BACKGROUND

17.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13

CLASS ACTION COMPLAINT

seconds deciding whether to make an in-store purchase;[1]; this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[2] While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they felt "duped" or "misled" by certain types of packaging of items that they have purchased.[3]

18.     Accordingly, Defendant chose a certain size container for its Product to convey to consumers that they are receiving a certain and substantial amount of product commensurate with the size of the containers.  Instead, consumers are receiving a substantial amount of nonfunctional slack-fill.

19.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

20.     Defendant falsely represents the quantity of product in the Product's opaque containers through its packaging. The size of each container of hair cream leads the reasonable consumer to believe he or she is purchasing a container full of hair product when in reality what they are actually receiving is significantly less than what is represented by the size of the container.

21.     Even if Plaintiff and other reasonable consumers of the Product had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight, they did not and would not have reasonably understood or expected such representations to translate to a quantity of semi-liquid product

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-windown/ (last visited July 2025).
[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).
[3] https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited July 2025).

meaningfully different from their expectation of an amount of product commensurate with the size of the container.

22.     Prior to the point of sale, the Product's packaging does not allow for an accurate visual or audial confirmation of the quantity in the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Product before opening the containers, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Product.

23.     The other information that Defendant provides about the quantity of hair cream on the label of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the sizes of the containers themselves. For instance, *nothing* on the outside of the Product and its label would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

24.     Disclosures of net weight in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of item contained in the Product's containers that would be different from their expectation that the quantity of hair cream is commensurate with the size of the container.

25.     Because the package is filled to about half of its capacity, Defendant can increase the Product's fill levels significantly without affecting how the containers are sealed, or it can disclose the fill-levels on the outside labeling to inform consumers of the amount of product actually in the containers, consistent with the law.

26.     Defendant may also allege that the product contains slack-fill so consumer can dispense the product more easily, but other comparable products are much fuller and still dispense properly.  As depicted in the image below, Plaintiff's finger is pointing at the level of hair cream in relation to the outside of the tube in the below photograph. Defendant simply wants a guise for its nonfunctional slack-fill.

1
2
3
4
5
6
7
8
9
10
11
12



13    27.    Defendant can easily increase the quantity of product in each container (or,
14  alternatively, decrease the size of the containers) significantly.

15    28.    Plaintiff purchased a bottle of Defendant's 6-fluid-ounce OGX Locking.+
16  Coconut Curls Air Dry Cream for personal use in 2025 from Target.

17    29.    Plaintiff paid $9.69 for the hair cream, which is a premium price for the
18  Product.

19    30.    Plaintiff had dual motivations for purchasing the product.  First, Plaintiff is
20  a consumer rights "tester" who creates public benefit by ensuring that companies comply
21  with their obligations under California law.  Second, Plaintiff was genuinely interested in
22  consuming and enjoying the Product, and did so – with disappointment that the container
23  had a significant amount of empty space.

24    31.    Plaintiff's  status  as  a  dual  motivation  tester  is  both  necessary  and
25  appropriate.  First, it is "necessary and desirable for committed individuals to bring serial
26  litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57
27  F.4th 1085, 1097 (9th Cir. 2023).  Second, nearly all consumers have dual motives, as
28  there  are  usually  multiple  reasons  behind  their  purchasing  decisions. *See  Cordes  v.*

*Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).

32.    In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which were prepared and approved by Defendant and its agents, and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product.

33.    Plaintiff understood the size of the container and product label to indicate that the amount of hair cream contained therein was commensurate with the size of the container, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the container and product label were false and misleading.

34.    Plaintiff would not have purchased the Product had she known that the Product contained slack-fill that serves no functional or lawful purpose.

35.    Plaintiff seeks damages and, in the alternative, restitution.    Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

36.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.    For example, Plaintiff's claim under the CLRA is subject to the reasonable consumer test.    Plaintiff may be able to prove Plaintiff's claim for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, while not being able to prove one or more elements of Plaintiff's legal claim under the CLRA seeking damages.

37.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value.    In contrast, Plaintiff can seek restitution without making this showing.    This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's

representations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

38.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces.  Only an injunction can remedy this threat of future harm.

39.    If the Product's packaging and label were not misleading, then Plaintiff would purchase the Product in the future.  Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product are accurate and lawful, at which point she will reasonably be able to rely upon Defendant's representations about the Product.

### None of the Slack-Fill Statutory Exceptions Apply to the Product

40.    Under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, "No container shall be wherein commodities are packed shall … be … constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud."  (Cal. Health & Safety Code § 110375(a).)  "No container shall be … filled as to be misleading." *Id.* § 110375(b).  "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." *Id.*  "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.* "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [15 enumerated exceptions]." *Id.*

41.    None of the safe harbor exceptions for slack-fill at Business & Professions Code § 12606(b) apply to Defendant's Products.

**A.    Cal. Health & Safety Code § 110375(b)(1); Cal. Bus. & Prof. Code § 12606(b)(1) – Protection of the Contents**

42.    The slack-fill in the Product does not protect the contents of the package. In fact, because the Product consists of a creamy substance, there is no need to protect the Product with the slack-fill present.

**B.    Cal. Health & Safety Code § 110375(b)(2); Cal. Bus. & Prof. Code § 12606(b)(2) – Requirements of Machines**

43.    The machines used to package the Product would not be affected if there were more semi-liquid product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

44.    Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

**C.    Cal. Health & Safety Code § 110375(b)(3); Cal. Bus. & Prof. Code § 12606(b)(3) – Unavoidable Product Settling During Shipping and Handling**

45.    The slack-fill present in the Product is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling. Even if *some* product settling may occur, there is no reason why the Product's containers are approximately 25% empty.

**D.    Cal. Health & Safety Code § 110375(b)(4); Cal. Bus. & Prof. Code § 12606(b)(4) – Labeling Information**

46.    There is no need to use a larger than required container to provide adequate space for the legible presentation of mandatory and necessary labeling information.

**E.    Cal. Health & Safety Code § 110375(b)(5); Cal. Bus. & Prof. Code § 12606(b)(5) – Decorative or Representational Container**

47.    The Product's containers are not a necessary part of the presentation of the Product.  They do not constitute a significant in proportion of the value of the Product,

nor have an independent function to hold the Product, such as a gift combined with a container that is intended for further use after the product is consumed, or durable commemorative or promotional packages.  The Product's containers may be discarded immediately after the hair product is consumed.

**F.     Cal. Health & Safety Code § 110375(b)(6); Cal. Bus. & Prof. Code § 12606(b)(6) – Inability to Increase Level of Fill or Further Reduce Package Size**

48.    Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly.

49.    The size of the container is not at some minimum package size necessary to accommodate required labeling, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

**G.     Cal. Health & Safety Code § 110375(b)(7); Cal. Bus. & Prof. Code § 12606(b)(7) – Reasonable Relationship to Actual Amount of Product Contained Inside; Visibility of Amount of Product to Consumer**

50.    The Product's containers do not bear a reasonable relationship to the actual amount of Product contained inside, and the dimensions of the actual Product's containers, the Product, and/or the amount of Product therein are not visible to the consumer at the point of sale.

**H.     Cal. Health & Safety Code § 110375(b)(8)(A); Cal. Bus. & Prof. Code § 12606(b)(8)(A) – Visibility of the Dimensions of the Product Through the Exterior Packaging**

51.    The dimensions of the Product or the immediate product container are not visible through the exterior packaging, which is opaque.

**I.     Cal. Health & Safety Code § 110375(b)(8)(B); Cal. Bus. & Prof. Code § 12606(b)(8)(B) – "Actual Size" Depiction**

52.    For the Product at issue herein, the immediate Product container does not contain any clear and conspicuous depiction of the actual amount of the Product on any

side of the packaging.  The Product's containers do not contain a clear and conspicuous disclosure that any depiction of the actual size of the Product is the "actual size" of the Product.

**J.     Cal. Health & Safety Code § 110375(b)(8)(C); Cal. Bus. & Prof. Code § 12606(b)(8)(C) – "Fill Line"**

53.    For the Product at issue herein, the immediate Product container does not clearly and conspicuously depict any line or a graphic that represents the Product or Product fill and a statement communicating that the line or graphic represents the Product or Product fill such as "Fill Line."

**K.     Cal. Health & Safety Code § 110375(b)(9); Cal. Bus. & Prof. Code § 12606(b)(9) – Headspace**

54.    For the Product at issue herein, the immediate Product container does not have any headspace necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers before use.  The Product container contains no instructions stating that headspace is necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers before use.

**L.     Cal. Health & Safety Code § 110375(b)(10); Cal. Bus. & Prof. Code § 12606(b)(10) – Product Delivery Device**

55.    The exterior packaging does not contain a product delivery or dosing device.

**M.     Cal. Health & Safety Code § 110375(b)(11); Cal. Bus. & Prof. Code § 12606(b)(11) – Kit**

56.    For the Product at issue herein, the immediate Product container is not a kit that consists of a system, or multiple components, designed to produce a particular result that is not dependent upon the quantity of the contents.  There is no clear and conspicuous disclosure of any kit on the exterior packaging of the Product.

**N.     Cal. Health & Safety Code § 110375(b)(12); Cal. Bus. & Prof. Code § 12606(b)(12) – Display Via Tester Units or Demonstrations in Retail Stores.**

57.     The exterior package of the Product is not routinely displayed using tester units or demonstrations to consumers in retail stores, so that customers can see the actual, immediate container of the Product being sold, or a depiction of the actual size of the container before purchase.

58.     Below are photographs of the Product's display at typical retail stores:




**O.     Cal. Health & Safety Code § 110375(b)(13); Cal. Bus. & Prof. Code § 12606(b)(13) – Holiday Boxes or Gift Packages**

59.     The Product is not offered for sale at retail stores in exterior packaging consisting of single or multiunit presentation boxes of holiday or gift packages.

**P.     Cal. Health & Safety Code § 110375(b)(14); Cal. Bus. & Prof. Code § 12606(b)(14) – Free Sample or Gift**

60.     The Product is not offered for sale at retail stores in exterior packaging consisting of a combination of one purchased product, together with a free sample or gift, wherein the exterior packaging is necessarily larger than it would otherwise be due to the inclusion of the sample or gift.

**Q.    Cal. Health & Safety Code § 110375(b)(15); Cal. Bus. & Prof. Code § 12606(b)(16) – Mode of Commerce**

61.    The mode of commerce allows the consumer to view or handle the physical container of the Product.

**Q.    Cal. Bus. & Prof. Code § 12606(b)(15) – Computer Hardware or Software**

62.    In comparison to the Sherman Law's exceptions set forth above, California's Fair Packaging and Labeling Act, Cal. Bus. & Prof. Code § 12606, contains an overlapping list of exclusions to nonfunctional slack-fill in the packaging of commodities with one exception set forth in Cal. Bus. & Prof. Code § 12606(b)(15).  The immediate Product container does not enclose computer hardware or software designed to serve a particular computer function.

63.    Because none of the safe harbor provisions in either the Sherman Law or the Fair Packaging and Labeling Act apply to the Product's container or packaging, the container contains nonfunctional slack-fill in violation of section 110375 of the California Health and Safety Code and section 12606 of the California Business and Professions Code, and are, therefore, misleading as a matter of law.

64.    Defendant's false, deceptive, and misleading filling of the Product containers is unlawful under state consumer protection and packaging laws.

65.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

## <u>CLASS ACTION ALLEGATIONS</u>

66.    Plaintiff bring this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

**All Californians who purchased any product from Defendant containing non-functional slack fill in California during the four years preceding the filing of this action (the "Class").**

67.    Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

68.    The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

69.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.    Common questions of law and fact include, but are not limited to, the following:

a. The true nature and amount of product contained in each Product's packaging;

b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

c. Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business & Professions Code § 17200, *et seq.*;

d. Whether Defendant's conduct is an unfair business act or practice within the meaning of Business & Professions Code § 17200, *et seq.*;

e. Whether Defendant's advertising is untrue or misleading within the meaning of Business & Professions Code § 17500, *et seq.*;

f. Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

g. Whether Defendant knew or should have known that the misrepresentations were false;

h. Whether Plaintiff and the Class paid more money for the Product than they actually received;

   i. How much more money Plaintiff and the Class paid for the Product than they actually received; and

   j. Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members.

70. Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

71. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

72. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the containers and the Product's label, which she believed to be indicative of the amount of hair product contained therein as commensurate with the size of the containers. Plaintiff relied on Defendant's representations and would not have purchased the Product if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

73. The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions.

74. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer

CLASS ACTION COMPLAINT

1    management difficulties and provides the benefits of a single, uniform adjudication,

2    economies of scale, and comprehensive supervision by a single court.

3         75.    Defendant has acted on grounds generally applicable to the entire Class,

4    thereby making final injunctive relief and/or corresponding declaratory relief appropriate

5    with respect to the Class as a whole. The prosecution of separate actions by individual

6    Class members would create the risk of inconsistent or varying adjudications with respect

7    to individual members of the Class that would establish incompatible standards of

8    conduct for Defendant.

9         76.    Absent a class action, Defendant will likely retain the benefits of its

10   wrongdoing. Because of the small size of the individual Class members' claims, few, if

11   any, Class members could afford to seek legal redress for the wrongs complained of

12   herein. Absent a representative action, the Class members will continue to suffer losses

13   and Defendant will be allowed to continue these violations of law and to retain the

14   proceeds of its ill-gotten gains.

15                          **FIRST CAUSE OF ACTION**

16              **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

17          **CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

18        77.    Plaintiff repeats and re-alleges the allegations set forth in the preceding

19   paragraphs and incorporate the same as if set forth herein at length.

20        78.    Plaintiff brings this claim individually and on behalf of the Class.

21        79.    The Sherman Law declares any cosmetic to be misbranded if it is false or

22   misleading in any particular or if the labeling and packaging do not conform with the

23   requirements for labeling and packaging.  (Cal. Health & Safety Code §§ 109900,

24   111730, 111750.)

25        80.    The UCL prohibits "any unlawful [or] unfair... business act or practice."

26   (Cal. Bus & Prof. Code § 17200.)

27                            **A. "Unfair" Prong**

28

81.    Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

82.    Defendant's actions alleged herein do not confer any benefit to consumers.

83.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

84.    Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Product and receive a quantity of hair product less than what they reasonably expected to receive.

85.    Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

86.    Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

87.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code § 17200, weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

88.    Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

89.    The California Legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code § 12606 and California Health & Safety Code, Division 104, Part 5, Chapter 7, Article 3.

90.    Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

91.    Defendant knew or should have known of its unfair conduct.

92.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

93.    There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of hair care item contained within the Product.

94.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

95.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for this product.  Specifically, Plaintiff paid for hair cream she never received. Plaintiff would not have purchased the Product if she had known that the Product's packaging contained nonfunctional slack-fill.

### B. "Unlawful" Prong

96.    California Business & Professions Code § 17200, *et seq.*, identifies violations of other laws as unlawful practices that the UCL makes independently actionable.

97.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates the Sherman Law, California Civil Code § 1750, *et seq.*, and California Business & Professions Code § 17500, *et seq*.

98.    Defendant's packaging of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

99.    Defendant knew or should have known of its unlawful conduct.

100.    As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code § 17200.

101.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of hair cream contained in the Product or indicated how much product the Product contained with a clear and conspicuous fill line or other disclosure

102.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

103.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product.  Specifically, Plaintiff paid for hair care product she never received. Plaintiff would not have purchased the Product if she had known that the packaging contained nonfunctional slack-fill.

104.    As a result of the conduct described herein, Plaintiff and members of the Class are entitled to equitable relief including, but not limited to, restitution as no adequate remedy at law exists.

a.    The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Product between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

b.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Product's packaging. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual

who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

105. Pursuant to California Civil Code § 3287(a), Plaintiff and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq*.

106. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

107. Plaintiff brings this claim individually and on behalf of the Class.

108. California's FAL, California Business & Professions Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should beknown, to be untrue or misleading."

109. Defendant knowingly manipulated the physical dimensions of the Product as a means to mislead the public about the amount of contained in the Product's packages.

110. Defendant controls and controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of shampoo contained in the Product was untrue and misleading.

111.   Defendant's action of packaging the Product with nonfunctional slack-fill, instead of including more shampoo in the container or decreasing the size of the container, is likely to deceive the general public.

112.    Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of section 17500.

113.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Product for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and Class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

114.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the packaging and labeling as alleged herein were false.

115.   Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interest and attorneys' fees.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

116.   Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

117.   Plaintiff brings this claim individually and on behalf of the Class.

118.   The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.  (Cal. Civ. Code § 1770(a).)

119.   The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with the Sherman Law; (2) representing the Product has characteristics and quantities that they do not have; and (3) advertising and packaging the Product with intent not to sell it as advertised and packaged.

120.   Defendant packaged the Product in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

121.   Defendant deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which it does not have, *e.g.*, that the Product is free of nonfunctional slack-fill when they are not. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

122.   Defendant deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell it as advertised and by intentionally underfilling the Product's containers and replacing product with nonfunctional slack-fill. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

123.   Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be

commensurate with the size of the packaging. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

124.    Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

125.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights.

126.    Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth, Plaintiff and the Class would not have purchased the Product.

127.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for beauty product she never received. Plaintiff would not have purchased the Product had she known the container contained nonfunctional slack-fill.

128.    On or about June 23, 2025, Plaintiff sent two letters notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct, repair, replace, or provide another appropriate remedy of the violations.  The notice was in writing and sent by certified mail, return receipt requested to Defendant's principal place of business in California.

129.    More than 30 days have elapsed since Plaintiff sent such demand letters to Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so within a reasonable time.

130.    Plaintiff seeks injunctive relief, damages, and punitive damages under the CLRA.

CLASS ACTION COMPLAINT

131. Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Product that are not what they expected to receive due to Defendant's misrepresentations.

132. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively use nonfunctional slack-fill in the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more hair cream to the Product, reshaping the tube so as not to be misleading of the outer container, or adding a disclosure regarding the size of the tube on the outside label of the Product. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (*i.e.*, purchasers who have been misled), while injunctive relief is necessary to remedy future harm (*i.e.*, prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (*e.g.,* the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.    An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.    An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

C.    Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D.    Restitution and/or disgorgement in an amount to be determined at trial;

E.    Punitive damages;

F.    Reasonable attorneys' fees and costs; and

G.    Granting such other and further as may be just and proper.


Dated:  August 2, 2025            PACIFIC TRIAL ATTORNEYS, APC


                                  By: _/s/ Scott J. Ferrell_____
                                  Scott. J. Ferrell
                                  Attorneys for Plaintiff

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated, | VOGUE INTERNATIONAL LLC, a Delaware limited liability company, d/b/a OGX; and DOES 1-10, |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pacific Trial Attorneys, APC, 4100 Newport Place Dr., Suite 800, Newport Beach, CA 92660; 949-706-6464

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(d)(2)

Brief description of cause:
This complaint states causes of action for violation of California Unfair Competition Law; False and Misleading Advertising and violations of the CLRA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE: August 2, 2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ Scott J. Ferrell

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: <u>Nature of Suit Code Descriptions.</u>

V.   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.